IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMAS KIBLER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-1275 (MN) |
| | ) | |
| ROBERT MAY, Warden, and ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| DELAWARE, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Andrea S. Brooks, WILKS LAW, LLC, Wilmington, DE; Cheryl J. Sturm, Chadds Ford, PA – Attorneys for Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE – Attorney for Respondents.

September 14, 2023
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Pending before the Court is a counseled Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed on behalf of Petitioner Thomas Kibler ("Petitioner"). (D.I. 1). The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 12; D.I. 17). For the reasons discussed, the Court will deny the Petition.

**I.    BACKGROUND**

In 1986, a Delaware Superior Court jury convicted Petitioner of attempted first degree murder and possession of a deadly weapon during the commission of a felony. The Superior Court sentenced Petitioner to a mandatory term of life imprisonment without probation or parole for the attempted murder conviction and to a term of eight years of imprisonment for the weapon conviction. The Delaware Supreme Court affirmed his convictions and sentences on direct appeal. *See Kibler v. State*, 547 A.2d 633 (Table), 1988 WL 93403, at *1, *7 (Del. July 25, 1988).

Between 1989 and 1991, Petitioner sought post-conviction relief in the Delaware state courts via Delaware Superior Court Criminal Rule 61 and a petition for writ of habeas corpus. The Superior Court denied both requests, and the Delaware Supreme Court affirmed those decisions. *See Kibler v. State*, 561 A.2d 992 (Table), 1989 WL 68312 (Del. June 6, 1989) (Rule 61 motion); *Kibler v. Redman*, 587 A.2d 454 (Table), 1991 WL 22377 (Del. Feb. 4, 1991) (habeas petition). Since that time, Petitioner has unsuccessfully requested to be released on parole seven times. (D.I. 13-8 at 2).

The instant case involves the circumstances surrounding the treatment of Petitioner's seventh petition for parole filed in 2018. The Delaware Board of Parole ("Board") denied Petitioner's seventh petition for parole on August 22, 2018. (D.I. 13-7). On May 31, 2019, Petitioner filed in the Superior Court a petition for a writ of mandamus to compel the Board to grant him parole and for the Department of Correction ("DOC") to reduce his sentence by his

meritorious credits.  (*See* D.I. 13-8 at *1).  The Superior Court dismissed his mandamus petition, and the Delaware Supreme Court affirmed that decision on January 31, 2020.  (*See* D.I. 13-8); *Kibler v. Phelps*, 225 A.3d 387 (Table), 2020 WL 520935 (Del. Jan. 31, 2020).  Petitioner filed the instant § 2254 Petition asking the Court to either direct the Board to grant Petitioner conditional release minus good time credits or direct the Board "to hold a fair parole hearing."  (D.I. 3 at 9).

## II.   GOVERNING LEGAL PRINCIPLES

### A.   The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism."  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).  Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B.   Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999);  *Picard v. Connor*, 404 U.S. 270, 275 (1971).  AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i)  there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits.  *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused, and the claims treated as "technically exhausted", if state procedural rules preclude him from seeking further relief in state courts.  *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006).  Although treated as technically exhausted, such claims are  procedurally defaulted for federal habeas purposes.  *See Coleman*, 501 U.S. at 749 (1991); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000).  Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims.  *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.  To demonstrate cause for a procedural

default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004); *see also Reeves v. Fayette SCI*, 897 F.3d 154, 157 (3d Cir. 2018).

### C.    Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C.

---

[1]    A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

§ 2254(d).  Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court proceeding.  28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied.  *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011).  As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 99.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413.  The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002).  For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Id*.  In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case."  *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

When performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). State court factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

Conversely, if the state's highest court did not adjudicate the merits of a properly presented claim, the claim is reviewed *de novo* instead of under § 2254(d)'s deferential standard. *See Breakiron v. Horn,* 642 F.3d 126, 131 (3d Cir. 2011); *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009). *De novo* review means that the Court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." *Williams v. Taylor*, 529 U.S. 362, 400 (2000) (Justice O'Connor concurring). "Regardless of whether a state court reaches the merits of a claim, a federal habeas court must afford a state court's factual findings a presumption of correctness and . . . the presumption applies to factual determinations of state trial and appellate courts." *Lewis*, 581 F.3d at 100 (cleaned up).

### D.   History of Parole in Delaware

Delaware law extends to most prisoners sentenced before 1990 two potential avenues for early release from prison. The parole statute, [] § 4346, provides that prisoners may be released on parole after serving one-third of the term imposed by the sentencing court, reduced by any accumulated merit or good behavior credits (together, "good time credits"). For the purposes of parole eligibility, [§ 4346(c)] measures the length of a life sentence with

the possibility of parole as a "fixed term of 45 years." Delaware empowers the Board of Parole to grant or deny parole, in its discretion, by using the "best interest of society" standard as a touchstone.

The second avenue, known as "conditional release," is defined as "the release of an offender from incarceration to the community by reason of diminution of the period of confinement through merit and good behavior credits." Section 4348 of title 11 of the Delaware Code, the conditional release statute, provides, in relevant part:

> A person having served that person's term or terms in incarceration, less such merit and good behavior credits as have been earned, shall, upon release, be deemed as released on parole until the expiration of the maximum term or terms for which the person is sentenced.

A person's "term . . . in incarceration" is his maximum period of incarceration, as set by the sentencing judge. Delaware authorities record the end date of an inmate's maximum term of incarceration on a "status sheet." Section 4348 requires state authorities to release an inmate who has reached his "short-term release date"—that is, his maximum term of incarceration, less accrued good time credits.

The parole and conditional release statutes are similar in certain respects. Both account for good time credits in calculating a reduction in the length of confinement. And once an inmate is released from prison, either by way of parole or conditional release, he remains under state supervision and his release depends on compliance with conditions of parole. The statutes also differ in important respects. While the decision to release an inmate on parole under § 4346 lies within the discretion of the Parole Board, conditional release under § 4348 is automatic. In addition, § 4346(c) defines a life sentence with the possibility of parole as a fixed term of 45 years, but § 4348 makes no mention of an alternative definition for a life term.

*Evans v. Phelps,* 468 F. App'x 112, 113-14 (3d Cir. 2012) ("*Evans 3d Cir.*").

The Delaware General Assembly enacted the Truth-in-Sentencing Act ("TIS") on June 20, 1990, which applies to crimes committed after that date. *See* 67 Del. Laws c. 130, § 3. TIS eliminated parole, but not conditional release, as a method for obtaining early release. *See* 11 Del. C. §§ 4354, 4348; *Crosby v. State*, 824 A.2d 894, 899-900 (Del. 2003). Under the system in effect after the enactment of TIS, "the reduction of a sentence by earned good time credit [will only] result in conditional release under section 4348 for eligible inmates," not in release via parole. *Evans v. State,* 872 A.2d 539, 554 (Del. 2005) ("*Evans II*").

Since the enactment of TIS, the Delaware Supreme Court has addressed whether the equating of a life sentence as a 45-year term for § 4346(c) eligibility permits a prisoner's parolable life sentence to be viewed as a forty-five year term for the purpose of determining a conditional release date under § 4348 on several occasions. First, in *Jackson v. Multi–Purpose Criminal Justice Facility*, the Delaware Supreme Court was asked to determine if a prisoner with a parolable life sentence imposed pre-TIS is entitled to conditional release under § 4348 when denied parole under § 4346. *See Jackson*, 700 A.2d 1203, 1207 (Del. 1997), *overruled in part by Crosby*, 824 A.2d 894. The *Jackson* court held that a prisoner serving a life sentence imposed pre-TIS, with the possibility of parole, cannot obtain conditional release under § 4348 because "[i]f the General Assembly had intended to permit those inmates serving life sentences with the possibility of parole to be eligible for conditional release under Section 4348, presumably it would have stated so expressly, as it did in Section 4346." *Id*. The Delaware Supreme Court explained that the absence of language defining a life sentence as a fixed term of 45 years in § 4348 shows "a deliberate decision by the General Assembly to exclude those serving life sentences from qualifying for early release under Section 4348." *Id*.

Next, in *Crosby v. State*, the Delaware Supreme Court addressed whether a non-violent habitual offender's life sentence, imposed post-TIS pursuant to 11 Del. C. § 4214(a), violated the Eighth Amendment.  The court explained that its resolution of the issue depended, "in part, upon whether Crosby's life sentence as a habitual offender under section 4[2]14(a) is considered to be a term of 45 years, with the possibility of earning a substantial sentence diminution through good time credits; or is considered to be a natural life sentence with no possibility of reduction or release prior to death." *Crosby*, 824 A.2d at 897.  The *Crosby* court opined that §§ 4346 (parole eligibility) and 4348 (conditional release) should be read *in pari materia* such that § 4348 incorporates the definition of a life sentence contained in § 4346(c) as being a fixed term of forty-five years. *See id*. at 898–99.  As part of its review of legislative history, the court stated, "to the extent that *Jackson* is inconsistent with this opinion, it is overruled." *Id*. at 899.  The Delaware Supreme Court found that the General Assembly intended a life sentence under § 4214(a) to be treated differently from all other life sentences and ultimately held that "a person sentenced to life as a habitual offender pursuant to section 4214(a) is to be considered as having been sentenced to a fixed term of 45 years and qualifies for conditional release pursuant to section 4348, based upon good time credits earned pursuant to section 4381." *Id*. at 901-02.

The next year, the Delaware Supreme Court revisited the question presented in *Jackson*. *See Evans v. State*, 2004 WL 2743546 (Del. Nov. 23, 2004) ("*Evans I*").  Initially, the *Evans I* court decided that *Crosby* required an inmate's parolable life sentence imposed pre-TIS to be treated as a 45-year term for purposes of determining the inmate's qualification for conditional release. *See Evans v. Phelps*, 722 F. Supp. 2d 523, 526-28 (D. Del. 2010) *("Evans Dist. Ct.")*.  at 526-28.  "In response to *Evans I*, the Delaware General Assembly enacted an amendment to the

Delaware State Code, House Bill No. 31, which purported to overrule *Evans I*.  Thereafter, the Delaware Supreme Court agreed to reconsider its decision in *Evans I*."  *Id*. at 528.

Upon reconsideration, the Delaware Supreme Court withdrew the *Evans I* decision, holding that House Bill No. 31 was unconstitutional and that a life sentence with the possibility of parole imposed pre-TIS was not defined as a 45-year term.  *See Evans II*, 872 A.2d at 543-53.  The *Evans II* court found that Evans' situation was governed by its 1997 decision in *Jackson*.  *See Evans II*, 872 A.2d at 554–55. The *Evans II* court noted that its statements in *Crosby* about "the operation of section 4346 and section 4348 upon the pre-Truth-in-Sentencing life sentences with the possibility of parole for violent crimes, were overbroad and unnecessary to the holding.  That *obiter dicta* in *Crosby* is what caused the initial confusion in [*Evans I*]." *Id*. at 558.

Evans challenged the *Evans II* decision in 2006, arguing that the Delaware Supreme Court's 2005 interpretation of the applicable sentencing statutes violated his right to Due Process.  *See Evans v. State*, 918 A.2d 1170 (Table), 2005 WL 5118396 (Del. Jan. 24, 2007).  The Delaware Supreme Court denied Evans' due process challenge, explicitly holding that its statutory interpretation in *Evans II* was not unforeseeable.  *Id*. at *2.

Evans then filed a habeas petition in this Court, contending that the Delaware Supreme Court's decision in *Evans II* was unforeseeable and, therefore, violated his due process rights.  The Honorable Joseph J. Farnan concluded, in relevant part, that the Delaware Supreme Court's interpretation of §§ 4346(c) and 4348 in *Evans II* "did not constitute an unforeseeable change in parole and conditional release determinations for life sentences imposed prior to the Truth–in–Sentencing Act based on the plain language of the relevant statutory provisions in effect at the time of petitioner's conviction and sentence. . . . In turn, because the Delaware Supreme Court's construction of Section 4346(c) and Section 4348 in *Evans II* was based on the plain language of

those provisions, the Court concludes that the holding in *Evans II* did not deprive Petitioner of his due process right of fair warning." *Evans Dist. Ct.*, 722 F. Supp. 2d at 530.  On appeal, the Third Circuit affirmed this Court's judgment, holding that "The Delaware Supreme Court did not act contrary to or unreasonably apply clearly established federal law in finding that *Evans II*'s construction of § 4348 comports with the Due Process Clause." *Evans 3d Cir.*, 468 F. App'x at 117.

## III.   <u>DISCUSSION</u>

The instant Petition challenges the execution of Petitioner's sentence and asserts the following three Claims for relief: (1) the Board violated Petitioner's substantive due process rights by disregarding the terms of 11 Del. C. § 4347 (c) when denying his 2018 parole request (D.I. 1 at 5; D.I. 3 at 5-6); (2) the Board violated Petitioner's due process rights and the *Ex Post Facto* Clause by holding that his life sentence does not mean a term of forty-five years when it denied his 2018 parole request (D.I. 1 at 7; D.I. 3 at 6-8); and (3) the Board violated the *Ex Post Facto* Clause – Article I, Section 10 of the United States Constitution – by applying a change in policy regarding the criteria to be considered when deciding whether to grant parole (D.I. 1 at 8; D.I. 3 at 9).

Liberally construing the allegations in Petitioner's Opening Brief on appeal from the Superior Court's denial of his petition for writ of mandamus, the Court finds that Petitioner exhausted state remedies for the instant three Claims.  (*See* D.I. 13-9 at 1-13).  The Delaware Supreme Court only adjudicated Claim Two on the merits.  Therefore, the Court will review Claims One and Three *de novo* and Claim Two under the deferential standard in § 2254(d).

### A.    **Claim One: Denial Of Parole Violated Petitioner's Substantive Due Process Rights**

Petitioner contends that the Board violated his substantive due process rights by arbitrarily and capriciously denying parole seven times without following the requirements of § 4347(c) and

by not giving reasons for the denials.  More specifically, he asserts that "there was no evidence that the Board considered job skills, progress toward or achievement of a general equivalency diploma, substance abuse treatment and anger management," and the Board did not explain why it believes he "continues to pose a risk to community." (D.I. 3 at 5).  This argument does not merit relief.

"There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011); *see also Eskridge v. Casson,* 471 F. Supp. 98, 101 (D. Del.1979) (noting that the Delaware parole statute does not create a liberty interest in being *released* on parole.).  Yet, once a state institutes a parole system, "all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *Block v. Potter,* 631 F.2d 233, 236 (3d Cir. 1980).

A petitioner will only prevail on a substantive due process claim with respect to a parole board's decision by establishing that the challenged action shocks the conscience.  *See Evans v. Sec'y Penn. Dep't Corrs.,* 645 F.3d 650, 659 (3d Cir. 2011).  The "official conduct most likely to rise to the conscience-shocking level is the conduct intended to injure in some way unjustifiable by any government test." *Chavez v. Martinez,* 538 U.S. 760, 775 (2003).  For instance, a Board of Parole may not arbitrarily deny parole on the basis of impermissible criteria such as race, religion, or the exercise of free speech rights, or on criteria with no rational relationship to the purpose of parole.  *See Block,* 631 F.2d at 236–37.  Importantly, however, the Third Circuit has stressed that "federal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is **some basis** for the challenged decision." *Coady v. Vaughn,* 251 F.3d 480, 487 (3d Cir. 2001) (emphasis added).

Section 4347 of Delaware's Parole statute provides, in relevant part:

> Among the factors the Board shall consider when determining if a
> defendant shall be placed on parole are as follows:  job skills,
> progress towards or achievement of a general equivalency diploma,
> substance abuse treatment and anger management and conflict
> resolution ["factors"].

11 Del. C. § 4347.  Although Delaware's parole statute requires the Board to consider the
aforementioned factors when determining whether to grant parole, nothing in the statute requires
the Board to provide evidence that it considered those factors or an in-depth explanation for its
decision.  The Board of Parole's  rules also do not require an in-depth explanation for its decisions.
For instance, Rule 15 provides as follows:

> 15. **PAROLE DENIAL DECISIONS:** When the Board has denied
> parole, the offender will be advised in writing of the reasons for the
> denial.  The Board will send written notification within a reasonable
> period of time.  If the offender is eligible for a rehearing, the Board
> will provide the earliest date on which the offender can apply for the
> rehearing, in accordance with 11 Del. C 4347(a), or, at the discretion
> of the board, order that no further consideration be given.

https://boardofparole.delaware.gov/rules/

In this case, the Board provided the following explanation for its 2018 denial of Petitioner's
parole request:

> The Board considered your testimony, institutional records,
> assessments/evaluations, prior criminal history, and program
> participation. It is the Board's opinion that you continue to pose a
> risk to the community.
>
> Based on the above-noted factors, the Board of Parole recommends
> that you work with your counselor to develop a plan for continued
> mental health programming/counseling.

(D.I. 13-7 at 1).  Contrary to Petitioner's assertion, this decision was not arbitrary, conscience-
shocking, or based on constitutionally impermissible factors.  While the Board may not have
explicitly mentioned Petitioner's job skills, education, or rehabilitative treatments/programs, the

Board's reference to Petitioner's "institutional records, assessments/evaluations, [] and program participation" indicates the Board considered the factors identified in § 4347, because Petitioner's compliance with/or completion of those factors would be detailed in such records, assessments, etc.  Petitioner also has not shown "willful noncompliance, bad faith, [or] a sufficient inference of retaliation or vindictiveness on the part of the Board[.]"  *Mickens-Thomas v. Vaughn*, 355 F.3d 294, 310 (3d Cir. 2004).  In sum, since the Board provided "some basis" for its decision, the Court concludes that Petitioner has failed to establish a violation of his substantive due process rights.

**B.     Claim Two:  The Delaware Supreme Court Violated Petitioner's Due Process Rights And The *Ex Post* Facto Clause By Not Treating His Pre-TIS Life Sentence As A Fixed Term Of 45 Years**

Petitioner was sentenced to life imprisonment without the possibility of parole in 1986 – before the enactment of TIS.  After the Board denied Petitioner's seventh request for parole, Petitioner filed in the Superior Court a *pro se* petition seeking a writ of mandamus to compel the board to grant him parole and to compel the DOC to reduce his sentence by meritorious credits. The Superior Court dismissed Petitioner's petition for a writ of mandamus, finding that he had failed to show that the DOC or the Board arbitrarily refused or failed to perform a non-discretionary duty.  (*See* D.I. 13-8 at 1).  Petitioner appealed that decision, arguing that he is "entitled to a writ of mandamus from incarceration on the statutory ground that he is entitled to mandatory parole and/or conditional (max out) release because he has accumulated various good time credits against his life sentence," which "shall be considered as having been sentenced to a fixed term of 45 years."  (D.I. 13-9 at 5).  The Delaware Supreme Court affirmed the Superior Court's denial of his mandamus request, explaining that this "Court has previously rejected the argument that a pre-TIS life sentence is treated as a fixed term of forty-five years for purposes of conditional release under 11 Del. C. § 4348."  *Kibler,* 2020 WL 520935, at *1.  The Delaware

14

Supreme Court cited several state court decisions in support of this statement, including *"Evans II"* and *Jackson*. *See id.* at *1 n.5.

In Claim Two, Petitioner essentially argues that the Delaware Supreme Court violated his right to due process and the *Ex Post Facto* Clause by retroactively applying *Evans II*'s holding that a life sentence with the possibility of parole imposed pre-TIS is not defined as a 45-year term but, instead, as a term for natural life. According to Petitioner, the Board should treat his life sentence as a term of forty-five years that can be reduced by good time credits, such that he can be provided with a conditional release date.

As previously discussed, both this Court and the Third Circuit rejected the same argument presented by Petitioner in *Evans Dist. Ct.* and *Evans 3d Cir.* *See supra* at Section II.D.; *Evans Dist. Ct.*, 722 F. Supp. 2d at 530-31; *Evans 3d Cir.*, 468 F. App'x at 116-17. Presumably in an effort to avoid having the Court summarily deny his argument as meritless under *Evans II*, *Evans Dist. Ct.*, and *Evans 3d Cir.*, and to demonstrate that the Delaware Supreme Court's affirmance of the denial of his mandamus request constituted an unreasonable application of federal law, Petitioner argues that this Court and the Third Circuit erred in deciding that *Evans II*'s interpretation of § 4346 and § 4348 did not violate due process "because the *Crosby* decision, as the first interpretation of §§ 4346 and 4348, dated back to 1964." (D.I. 3 at 7). He also contends that, by withdrawing *Evans I*, the Delaware Supreme Court in *Evans II* "changed the definition of a life sentence from life means 45 years for purposes of 4346 and 4348 to life means life." (D.I. 3 at 8). Petitioner's arguments are unavailing.

First, contrary to Petitioner's assertion, the first judicial interpretation of the interplay between § 4346 and § 4348 relating to a pre-TIS life sentence was the Delaware Supreme Court's decision in *Jackson* – decided in 1997 – and not the *Crosby* decision – decided in 2003. Moreover,

*Crosby* is inapposite, because the defendant in *Crosby* was a non-violent habitual offender sentenced to life after the enactment of TIS, and the defendant in *Jackson* was sentenced to life imprisonment for a violent felony prior to the enactment of TIS.

Second, Petitioner incorrectly identifies *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016) as the governing Supreme Court precedent. In *Montgomery*, the United States Supreme Court held that its ruling in *Miller v. Alabama*, 567 U.S. 460 (2012), which prohibited mandatory sentences of life without parole for juvenile offenders, was retroactively applicable. *Montgomery* and *Miller* do not apply in this case, because Petitioner was not a juvenile subject to a mandatory sentence of life without parole. Moreover, *Montgomery* concerned a state's failure to give retroactive effect to a new substantive rule of federal constitutional law; in this case, there is no "new substantive rule that, under the Constitution, must be retroactive." *Montgomery*, 136 S.Ct. at 732.

Instead, as both *Evans Dist. Ct.* and *Evans 3d Cir*. determined, *Bouie v. City of Columbia*, 378 U.S. 347, 354-55 (1964) and *Rogers v. Tennessee*, 532 U.S. 451, 462 (2001) provide the most relevant Supreme Court precedent applicable to the instant issue. *See Evans Dist. Ct.*, 722 F. Supp. 2d at 529; *Evans 3d Cir.*, 468 F. App'x at 116-17. In *Evans 3d Cir.*, the Third Circuit explained,

> *Bouie* and *Rogers* stand for the principle that judicial statutory construction that attaches criminal liability "to what previously had been innocent conduct" impairs due process, but it is less clear whether the decisions encompass statutory construction that unexpectedly broadens punishment for conduct already made criminal. Assuming, for the purposes of this appeal, that they do, the denial of Evans's due process claim is not contrary to or an unreasonable application of the cases. When Evans committed his crime—the relevant point in time for the purposes of judging foreseeability—the Delaware Supreme Court had not addressed the interplay between §§ 4346 and 4348. Its subsequent pronouncements in *Jackson*, *Crosby*, and *Evans I* therefore do not affect the question whether Evans had fair notice that violent defendants sentenced to life in prison are ineligible for § 4348 relief. As the District Court correctly reasoned, the plain text of § 4348 contains no hint that it treats a life sentence as anything other than a

> life sentence.  And, as the Delaware Supreme Court later explained in *Jackson,* the word "term" in § 4348 implies a fixed term rather than a life sentence.  This language supplies fair warning that conditional release is not available to certain offenders sentenced to a term of natural life rather than a fixed term of years.

*Evans 3d Cir*., 468 F. App'x at 117.

Based on the foregoing, the Court concludes that the Delaware Supreme Court's holding that Petitioner failed to "establish a clear legal right to conditional release" where the court had "previously rejected the argument that a pre-TIS life sentence is treated as a fixed term of forty-five years for purposes of conditional release under 11 Del. C. § 4348" was neither contrary to, nor an unreasonable application of, clearly established law.  Accordingly, the Court will deny Claim Two for failing to satisfy § 2254(d).

### C. Claim Three: The Board Violated The Ex Post Facto Law By Changing The Criteria For Determining Whether To Grant Parole

In Claim Three, Petitioner contends that the Board violated the *Ex Post Facto* Clause by applying a change in policy regarding the criteria to be considered when deciding whether to grant parole.  (D.I. 1 at 8; D.I. 3 at 9).  He avers that "the Board now gives almost total weight to the public safety factor and almost no weight to the liberty interest of the inmate."  (D.I. 3 at 9).  Petitioner's argument is unavailing.

The *Ex Post Facto* Clause prohibits statutory or policy changes that "retroactively alter the definition of crimes or increase the punishment for criminal acts."  *Cal. Dep't of Corrs. v. Morales,* 514 U.S. 499, 504 (1995).  A new law or policy violates the *Ex Post Facto* Clause if it is (1) retrospective, *i.e.* applying to events predating its enactment, and (2) disadvantageous to the offender affected by it.  *See Weaver v. Graham,* 450 U.S. 24, 29 (1981).

Retroactive changes in the rules of parole may violate the prohibition against *ex post facto* laws.  *See Garner v. Jones*, 529 U.S. 244, 250 (2000).  A petitioner establishes an *ex post facto*

violation in the parole context by showing "that the effect of a retroactive change in the law or policy created a 'significant risk' that the sentence ultimately served will be increased above and beyond what was prescribed when the crime was consummated, as a result of the new law. Allegations that changes in the law have produced "some ambiguous sort of 'disadvantage,'" or affected "a prisoner's opportunity to take advantage of provisions for early release," are not sufficient grounds for bringing an *ex post facto* claim. *Morales*, 514 U.S. at 506 n.3. A petitioner carries "the ultimate burden of establishing that the measure of punishment itself has changed," *Morales*, 514 U.S. at 510. n.6, *Garner*, 529 U.S. at 255, and "must show that as applied to his own sentence the law creates a significant risk of increasing his punishment." *Garner*, 529 U.S. at 255.

Here, Petitioner has not carried his burden of showing that "the measure of punishment itself has changed." To reiterate, the Board's written decision of denial 2018 provided:

> [Y]our request for release to parole supervision was denied. The Board considered your testimony, institutional records, assessments/evaluations, prior criminal history, and program participation. It is the Board's opinion that you continue to pose a risk to the community.

(D.I 13-7 at 1). Although Petitioner posits that the Board's notices over time suggest a substantial difference in policy considerations because they indicate the Board "exalt[s] the seriousness of the crime, and pay[s] little or no attention to other facts including rehabilitation," the Court notes that Petitioner has not provided copies of his other six parole denials to support his assertion that the Board's focus has changed over time. Consequently, as a factual matter, the Court cannot determine if the Board's "measure of punishment" has changed.

Additionally, Petitioner does not identify, and the Court has not discovered, any actual change in the Board's policy considerations that occurred over time. In 1964, the relevant statute provided:

§ 4347. Parole authority and procedure

(a) A parole may be granted when in the opinion of the Board there is reasonable probability that the person can be released without detriment to the community or to himself, and where in the Board's opinion parole supervision would be in the best interest of society and an aid to rehabilitation of the offender as a law-abiding citizen. A parole shall be ordered only for the best interest of society, not as an award of clemency; it shall not be considered a reduction of sentence or a pardon. A person shall be placed on parole only when the Board believes that he is able and willing to fulfill the obligations of a law-abiding citizen.

The language in § 4347 remained unchanged until 2005, when the General Assembly added a final sentence to that paragraph (which had previously been redesignated "(c)"): "Among the factors the Board shall consider when determining if a defendant shall be placed on parole are as follows: job skills, progress towards or achievement of a General Equivalency Diploma, substance abuse treatment and anger management and conflict resolution."  75 Del. Laws c. 102, § 1.

Although the Board's statutory procedure at the time of Petitioner's sentencing did not require the consideration of any particular factors, Petitioner does not contend that the addition of factors to the statutory eligibility provision in 2005 constituted a change in policy.  Notably, the enacting legislation provided the Board with discretion to grant parole only when the Board believes parole "would be in the best interest of society" and "that [a person] is able and willing to fulfill the obligations of a law-abiding citizen."  The factors that were added in 2005 merely provided a framework to aid the Board in making that determination and, arguably, did not indicate a change in policy.  Moreover, since the factors emphasize rehabilitation, the addition of those factors in 2005 would not have triggered the alleged change in policy about which Petitioner currently complains, namely, "exalting the seriousness of the crime."

Nevertheless, even if the addition of the factors in 2005 should be viewed as a change in policy, Petitioner has not "demonstrated that but for [the addition of the factors] he would have

19

been paroled, or that other similarly situated prisoners were paroled prior to the" addition of the factors. *Pleaze v. Klem,* 335 F. App'x 168, 172 (3d Cir. 2009).  In fact, given Petitioner's explicit argument in Claims One and Three that the Board erred by *not* considering the factors, it would appear that Petitioner views the addition of the factors as increasing his chance of being released on parole rather than as harming his chances for parole.

Based on the foregoing, the Court concludes that Petitioner has failed to demonstrate that the Board retrospectively applied a change in policy that disadvantaged him by creating a significant risk of increasing his punishment. *See Taylor v. Penn. Bd. of Prob. and Parole*, 181 F. App'x 253, 254-55 (3d Cir. 2006).  Therefore, the Court will deny Claim Three as meritless.

## IV.   <u>CERTIFICATE OF APPEALABILITY</u>

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability in this case.

## V.   <u>CONCLUSION</u>

For the reasons discussed, the Court will deny the instant Petition without issuing a certificate of appealability.  The Court will enter an Order consistent with this Memorandum Opinion.